SAMUEL, Judge.
Plaintiffs, husband and.wife, instituted this suit, individually and for the use and benefit of their minor daughter, for personal injuries, property damages and medical expenses incurred as a result of an accident when their automobile ran into a hole in a street in Edgard, La. The accident allegedly occurred as a result of the negligence of St. John the Baptist Parish utility employees. Defendant, the parish insurer, answered in the form of a general denial, alternatively pleading contributory negligence. Following trial, judgment was rendered against the defendant for $45,000 for pain and suffering (on the part of the plaintiff wife), and $2,839.61 in special damages. Defendant has appealed, contesting (1) liability and (2) quantum.
In connection with the issue of liability, the wife testified as to how the accident occurred, and plaintiffs also offered the testimony of Clifford Bailey, Jr. and Kathy Woods, both of whom had helped extricate her car from a ditch (but who had not witnessed the accident), and Laverne Jack, a lady whose automobile went into a hole in the same street the morning following the accident in suit. Defendant offered the testimony of three parish utility workers, Matthew Joseph, Louis Batiste and Hubert Morris, who had worked on the street the day of the accident and the following day.
It is admitted by all parties that a trench had been dug completely across the street by the parish utility workers on the day of the accident. The trench was to be used to receive a gas line. According to the utility workers, they used a backhoe to dig a trench about 3 feet deep by 2 feet wide to furnish gas service to a trailer. After the pipe was laid the trench was covered by the backhoe. It started to rain before the work was finished so the dirt was wet, but no hole was left, although there was a little mud on the road where the trench was filled. The workers left about 4 p. m. and *236 the following day returned to put shells on top of the trench to keep it from sinking. The following day they saw only about a 3 or 4 inch depression, across the width of the street.
Mrs. Burrell’s version of the accident is that it occurred about 11:15 p. m. on September 13, 1977, while she and her 3 year old daughter were driving on East Fifth Street toward River Road at a speed of 15-20 miles per hour. When she was about 3 feet away she saw a hill of mud to the right of the middle of the road occupying all of the right lane. She swerved to avoid the mud and one wheel went into a hole on the driver’s side. She had been on the street at lunch time and knew the parish was working on the road, but there was no warning that night to indicate the work had not been finished. After the accident she got help from a man who lived in one of the trailers and two ladies who had been driving down the street and stopped to assist.
The trial court must have found there was negligence on the part of the defendant workers and that the plaintiff wife was not eontributorily negligent. The record supports such a finding.
We do agree with appellant’s second contention, that the award of $45,000 is excessive for the injuries sustained.
Evidence of plaintiff’s injuries consists of her own testimony and that of two medical experts, Dr. Arthur Bohmfalk, Jr. (by deposition) and Dr. Raoul Reyes.
Her initial treating physician was Dr. Bohmfalk. She was seen by one of his associates on September 14, 1977, the day after the accident, with a contusion of the forehead. The following day spasms in the right cervical and shoulder area were noted, and the next day plaintiff complained of pain in the back. X-rays were negative for signs of injury. Because of plaintiff’s complaints, daily physical therapy was recommended, and muscle relaxants, local heat and mild analgesics were prescribed.'
Bohmfalk diagnosed plaintiff’s injuries as contusion of the forehead, mild sprain and strain of the neck and shoulder and severe sprain and strain of the lumbar and sacroiliac area. She was referred to Dr. Reyes because of her complaints of back and chest pain.[1]
Dr. Reyes testified he first saw Mrs. Bur-rell on October 7, 1977. He took a history prior to examining her. He concluded that as a result of the accident she sustained a sacral and cervical sprain and post traumatic cephalalgia (headache). Medication was prescribed. Within 24 hours the patient felt worse and was admitted to West St. James Hospital by another physician, who called Dr. Reyes as a consultant. On October 10, he reevaluated the patient in the hospital and found no change. She returned to him as an outpatient on November 3, 14 and 28, 1977 and had improved. Dr. Reyes recommended support shoes which would contribute to improving her back problems.
Upon examination on December 12, 1977, Mrs. Burrell had good motion of her back with residual ache and was permitted to return to full-time typist work, discontinue physical therapy, and advised to return for a check up in one month. She was discharged after a visit on February 9, 1978. She returned on two occasions in August, 1978 with complaints of back pain. Each time she was wearing unsuitable shoes and each time the problem of wearing incorrect shoes was discussed with her, because it would contribute to her back problem. When seen on September 18, 1978, she walked fairly well without limping but, because of her persistent complaints, she was referred to a neurologist. His report based upon EMG studies indicated any back problem she might be having was not related to a disc.
Dr. Reyes concluded maximum medical benefits had been reached by December 13, *237 1978 and again discharged her. However, she returned for visits on February 8, and March 1 and 22, 1979. The doctor was of the opinion she had not been exercising properly. She also had other problems which did not appear to be associated with the accident (gynecological problems). She returned on April 26 and May 24, 1979.
Dr. Reyes stated it was unusual for a patient to be discharged twice and still return with complaints, but he felt she was sincere. However, while her prognosis is good, her progress depends upon following his directions concerning wearing sensible shoes and faithfully doing the exercises he prescribed. If she had followed his directions, he concluded her problems would have resolved themselves sooner and, if she does not follow this regime regularly, she will have future problems.
Regarding her injuries, Mrs. Burrell testified: She hit her head on the steering wheel and her back started to hurt in the low mid back area. She also hurt her neck. She was seen at St. James Hospital the next day. Tylenol was recommended as was the use of a heating pad. X-rays were taken. She is employed as a clerk typist but was unable to work for some time after the accident. She denied having back problems before the accident and complains of pain in the back “off and on”. She wears shoes Dr. Reyes recommended but not all the time and sometimes does the exercises the doctor recommends, but they take 20 minutes twice a day and sometimes she can’t find time to do them. If she sits too long at work she has to get up and walk around. Her back has improved. She has trouble with her back if she mops or if she sits in one place too long but, other than that, her problem comes and goes.
It is clear from the trial court’s Reasons for Judgment that a large part of the award was based upon the fact that plaintiff, a young, attractive, “unmarried” female, would be required to wear unattractive orthopedic shoes, rather than the high heel shoes she prefers. Plaintiff is in fact not an unmarried female; her husband also is a plaintiff in this suit. In her own testimony she made little complaint about the shoes and there is no evidence she ever discussed the shoes with Dr. Bohmfalk. Her refusal to wear the shoes when advised to do so by Dr. Reyes contributed to the back problems plaintiff was experiencing. She still continues to act as her own physician in failing to follow his advice about the shoes and exercising..
In accordance with the guidelines set forth for us by the Supreme Court in Coco v. Winston Industries, Inc.,[2] we believe the record clearly demonstrates the trial court abused its discretion in making a $45,000 award for pain and suffering. We therefore reduce the award only to the extent of lowering it to the highest point which we believe is reasonably within the discretion afforded the trial court which, in our view, is $20,000.
For the reasons assigned, the judgment is amended to reduce the award to Mrs. Bur-rell for pain and suffering from the sum of $45,000 to the sum of $20,000. As thus amended, and in all other respects, the judgment appealed from is affirmed.

AMENDED AND AFFIRMED.

. She returned to Dr. Bohmfalk in June and August 11 and 14, 1978, with complaints of back strain but was not examined or treated by him since he considered her Dr. Reyes’ patient and advised her to return to him. She also requested a prescription from Dr. Bohmfalk on March 12, 1979 because Dr. Reyes was out of town.

. La., 341 So.2d 332.